**UNITED STATES of America,**
**Appellee,**

v.

**William Newton VAN FOSSEN,**
**Appellant.**

**No. 15123.**

United States Court of Appeals,
Fourth Circuit.

Argued March 2, 1971.

Decided May 16, 1972.

---

David G. Lowe, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The principal question on this appeal is whether the presence of William Van Fossen's thumbprints on two photographic negatives and one engraving plate is sufficient to sustain his conviction of possessing plates with intent to use them in counterfeiting federal reserve notes and of printing and photographing likenesses of the notes in violation of 18 U.S.C. § 474 (1970).[1] We hold the evidence is insufficient and reverse his conviction.

The photographic negatives and the engraving plate containing Van Fossen's thumbprint were confiscated by Secret Service agents from Brown's Business Forms, a printing shop located in Richmond, Virginia. The agents also seized counterfeiting equipment and approximately $170,000.00 in counterfeit currency. Roger Leo Brown, the owner and operator of the printing shop, was arrested and subsequently convicted of counterfeiting.

After the raid on the shop, the agents searched a room in Van Fossen's apartment, his wallet, his wife's purse, his car, and his truck. They found no in-

T. Wilson Hotze, Jr., Richmond, Va. (Court-appointed counsel) [Emroch & Hotze, Richmond, Va., on brief], for appellant.

---

1. Two counts of the indictment charged:
   "AND THE GRAND JURY FURTHER CHARGES that on or about the 28th day of October, 1969, at Richmond, Virginia, in the District and jurisdiction aforesaid, WILLIAM NEWTON VAN FOSSEN did have in his control, custody, and possession, plates made after and in the similitude of plates from which obligations of the United States have been printed with intent to use such plates in forging and counterfeiting obligations of the United States, to-wit, Federal Reserve Notes in the denomination of $50, $20, $10 and $5. (Title 18 U.S.C. § 474).

   .    .    .    .    .

   "AND THE GRAND JURY FURTHER CHARGES that on or about

   the 28th day of October, 1969, at Richmond, Virginia, in the District and jurisdiction aforesaid, WILLIAM NEWTON VAN FOSSEN did print and photograph and execute photographs and prints in the likeness of obligations of the United States and parts thereof, to-wit, portions of Federal Reserve Notes in denominations of $50, $20, $10, and $5, said prints and photographs having been made without the permission or knowledge of any proper officer of the United States (Title 18 U.S.C. § 474)."
   Van Fossen was acquitted of other counts that charged possession of counterfeit money, counterfeiting, attempting to sell counterfeit money, and making plates for counterfeiting.

criminating evidence, but took Van Fossen into custody and fingerprinted him. A comparison of his prints taken at this time with those found on the items seized at the printing shop showed that one print appeared on a plate and another on a negative that had been used in counterfeiting. The negative containing the third print apparently had not been used. The three left thumbprints were the sole evidence presented to link Van Fossen to Brown's illegal activities. At the conclusion of the government's case, Van Fossen moved for a judgment of acquittal. When this was denied, he elected to stand on his motion and presented no evidence.

The government's position is based on two steps. First, it contends that the thumbprints showed Van Fossen had possession of the negatives and plate. Second, since one of the negatives and the plate had been used to counterfeit currency, it asserts that the jury could conclude that Van Fossen had the intent to use the plate for counterfeiting and that he actually made photographs and forgeries of the currency or aided and abetted Brown. Van Fossen urges that the thumbprints are insufficient to show possession and that, in any event, they do not prove either his intention to use the plate or his reproduction of the notes as alleged in the indictment.

■ Contrary to an earlier rule, circumstantial evidence may support a verdict of guilty even though it does not exclude every reasonable hypothesis consistent with innocence. Holland v. United States, 348 U.S. 121, 126, 75 S.Ct. 127, 99 L.Ed. 150 (1954); White v. United States, 279 F.2d 740, 748 (4th Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960). The principles that govern our consideration of the sufficiency of the evidence were restated in United States v. Sherman, 421 F.2d 198, 199 (4th Cir.), cert. denied, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970):

"In considering the sufficiency of the evidence we do not determine whether it convinces us of guilt beyond a reasonable doubt, but only that the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt. . . . The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support the findings of guilt. . . . Where the evidence construed most favorably for the government is such that the jury might find the defendant guilty beyond a reasonable doubt, then the evidence is sufficient to sustain a finding of guilt. . . . "

Applying this standard, we recently held that a defendant's fingerprint on a matchbook cover which had been used by thieves to jam a lock did not support a conviction of burglary. Fingerprints on such a readily moveable object were of questionable probative value, we concluded, unless the proof showed they were impressed only during the commission of the crime. United States v. Corso, 439 F.2d 956 (4th Cir. 1971); accord, Borum v. United States, 127 U.S.App.D.C. 48, 380 F.2d 595 (1967); Hiet v. United States, 124 U.S.App.D.C. 313, 365 F.2d 504 (1966). In contrast, this term we upheld a conviction based on fingerprints discovered at a normally inaccessible place adjacent to a rifled money box in a delivery truck. The prints had not been present when the receptacle was examined shortly before the theft. We deemed the evidence sufficient because no stranger could have had a legitimate reason for exploring that part of the truck in the short interval between the earlier investigation and the occurrence of the crime. United States v. Bryant, 454 F.2d 248 (4th Cir. 1972); accord, Stevenson v. United States, 127 U.S.App.D.C. 43, 380 F.2d 590, cert. denied, 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967); Mason v. Commonwealth, 357 S.W.2d 667 (Ky.1962).

■ Read together, these cases illustrate a well established rule concerning the sufficiency of fingerprint evidence.

To warrant conviction the trier of fact must be able to reasonably infer from the circumstances that the fingerprints were impressed at the time the crime was committed. *See* State v. Smith, 274 N.C. 159, 161 S.E.2d 449, 452 (1968); 3 Wharton's Criminal Evidence § 982 (12th ed. 1955, Supp.1971); Annot. 28 A.L.R.2d 1115, 1150 (1953).

█ Even if we assume, without deciding, that the fingerprints showed Van Fossen possessed the negatives and the plate, the evidence is insufficient to sustain his conviction. Van Fossen is not charged with simple possession of these items. To secure convictions, the government had to establish Van Fossen's intent to use the plate illegally, and that he photographed and printed the counterfeit money, or aided and abetted another person in the commission of the crime. The flaw in the government's case is the failure of the evidence to disclose when the crime was committed and when Van Fossen's fingerprints were placed on the items seized from Brown's shop. For this reason the prosecution rests on conjecture and suspicion. Because no evidence in the record suggests that the prints were impressed when the crime was committed, the jury could only have guessed at this conclusion.

The evidence discloses that Brown also ran a legitimate print shop employing several persons. While the counterfeit paraphernalia were found in an unlocked safe at the time of the raid, the government introduced no evidence to show that the items bearing Van Fossen's prints were previously unavailable to a person in Brown's shop on legitimate business. In fact, the negatives and the plate contained other, unidentified prints. Moreover, no evidence was introduced to show that Van Fossen knew the items he touched were contraband.

The voids in the proof, which can be filled only by speculation, suffice to invalidate the conviction. Apart from them, two other facts tend to exculpate Van Fossen. The search of his person and property immediately after the raid on the shop furnished no evidence that incriminated him. And an undercover agent, who participated in Brown's arrest, offered in his testimony no evidence to connect Van Fossen with Brown's criminal activities.

The three cases on which the government relies are readily distinguishable. In United States v. Browning, 390 F.2d 511 (4th Cir. 1968), and United States v. Kelley, 186 F.2d 598 (7th Cir.), cert. denied, 341 U.S. 954, 71 S.Ct. 1004, 95 L.Ed. 1375 (1951), the defendants were apprehended passing counterfeit bills under circumstances that indicated they knew of the forgery. In each case there was sufficient evidence beyond mere possession of the bills to establish the commission of the crime. In short, conviction in those cases was sustained on the type of evidence that is lacking here. In United States v. Pisano, 193 F.2d 361 (7th Cir. 1951), the defendant was convicted of illegally dealing in narcotics solely because his fingerprints were on a package of heroin and on a paper found in a suitcase containing drugs. The court emphasized, however, that "under the charging statutes, the sometimes troublesome elements of intent are not here involved, for possession alone is sufficient for conviction." 193 F.2d at 365.[2] Pisano was prosecuted for violating a statute under which possession of unlawful narcotics created a prima facie presumption of guilt and placed on the accused the burden of explaining his possession to the satisfaction of the jury. Here the government is not armed with a similar presumption, and the "troublesome element" of Van Fossen's intent requires proof.

We need not consider Van Fossen's other assignment of error. The evidence is insufficient to prove his criminal intent and participation in Brown's counterfeiting operation. His motion for judgment of acquittal should have

---

2. The *Pisano* court quoted this sentence from Stoppelli v. United States, 183 F.2d 391, 394 (9th Cir.), cert. denied, 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950).

been granted. The conviction is reversed, and the case is remanded for dismissal of the indictment.

Reversed and remanded.

BOREMAN, Senior Circuit Judge (dissenting):

The fingerprint evidence clearly indicated that appellant had handled a plate and two photographic negatives which were found at the site of a large counterfeiting operation. There was no evidence, either direct or circumstantial, as to when or where appellant touched the items. The Government admits that the prints on the plate and negatives constituted the only evidence linking the appellant with the counterfeiting operation. However, viewing the evidence in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), United States v. Browning, 390 F.2d 511 (4 Cir. 1968), and mindful of the established rule that our review is limited to a determination whether substantial evidence was adduced which would permit a jury to find guilt beyond a reasonable doubt, United States v. Sherman, 421 F. 2d 198 (4 Cir. 1970), cert. denied, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78, I conclude that the evidence as to appellant's commission of the crimes of which he was convicted was sufficient to support the jury verdicts. I therefore respectfully dissent.

I

The majority assumes, without deciding, that the fingerprints showed Van Fossen possessed the plate and negatives. They conclude, nonetheless, that the conviction of possessing the plate with intent to use it in counterfeiting federal reserve notes cannot be upheld due to a want of evidence as to the requisite criminal intent. Because of my view of the case I deem it necessary to discuss in detail both the "possession" and the "intent" elements of the crime.

Appellant argues that possession of the plate was not shown since the evidence does not indicate that he ever had it in his control or custody. He offers Pinion v. United States, 397 F.2d 27 (5 Cir. 1968), as analogous to the instant case. In *Pinion*, the defendant was convicted in the district court of, *inter alia*, possession of an illegal distillery in violation of 26 U.S.C. § 5601(a) (1). One of Pinion's fingerprints was taken from an empty yeast can found at the site of the still. Additional evidence indicated Pinion's presence at the scene on more than one occasion. In reversing the possession conviction, the *Pinion* court stated, "The possession charge requires proof of control or of activities related to custody of the still." 397 F.2d at 28.

*Pinion* is one of numerous cases which stand for the proposition that possession of an illegal still may not be inferred from mere presence at that still. The Supreme Court has twice so held. United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).[1] Under the statute involved in those cases *possession* of the still is the very act deemed criminal; the instant case is similar in that possession of counterfeiting equipment is illegal when possessed with criminal intent.

The Government relies on United States v. Pisano, 193 F.2d 361 (7 Cir. 1951), and Stoppelli v. United States, 183 F.2d 391 (9 Cir. 1950), cert. denied, 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631. *Stoppelli* and *Pisano* involved, *inter alia*, prosecutions for the concealment of unlawful narcotics in violation of 21 U.S.C. § 174. The unexplained handling of packages containing narcotics shown by fingerprint evidence was held sufficient

---

1. In *Romano*, the Court ruled invalid a statutory inference (the statute having been enacted in response to *Bozza*) that the accused's presence at a still, without more, would be deemed sufficient to support a conviction on a charge of possession.

to show possession thereof.[2] Although concealment rather than mere possession was the activity there proscribed these cases were concerned specifically with the inference of *possession* from fingerprint evidence. One issue here is whether the fingerprint evidence, standing alone, will support the inference of possession.

I find *Stoppelli* and *Pisano* more persuasive than those cases dealing with possession of a still. The former stand for the proposition that evidence of the defendant's fingerprints on a package containing narcotics will suffice to show he possessed that package. The instant problem—whether the defendant's thumb print on counterfeiting equipment is sufficient proof of his possession of that equipment—is clearly similar to the problems presented in *Stoppelli* and *Pisano*.

Seemingly, there would be no question as to possession of contraband if an accused held the offending article in his hand when apprehended. It is not unreasonable for a jury to infer from the presence of the defendant's fingerprint on an article that he once held that article. As stated in *Pisano, supra*, 193 F. 2d at 365:

"Pisano's fingerprints were found upon one of the packages containing narcotics as well as upon some wrapping paper found in the suitcase with the drugs. This means that he had had his hands upon the package and the paper at some time, in other words, that he had handled them, and in order to do so, he must have had possession of them."

I am persuaded that one who holds an article (contraband, such as a package of narcotics or a counterfeiting plate) in his hands may reasonably be said, in the absence of a satisfactory explanation, to have exercised dominion over or control of and to have had possession of that article. It is far less reasonable to infer that one controls an illegal distillery just because he is present at that still.

Possession of the plate, an article obviously designed for a specific use, having been shown, I think it not unreasonable for the jury to find that the possessor intended to use it in violation of law. The very nature of the article supports such an inference. The primary use for which it is intended and exclusively employed is the making of counterfeit money. Possibly there may be explanations tending to show innocent possession by Van Fossen but it was not incumbent upon the Government to negative every possibility.[3] As was stated in *Stoppelli*, in another context:[4]

"No doubt, flights of fancy, to infer innocent possession, could be indulged in. . . . [But] A reasonable mind would have to discard its common sense to indulge in such capricious vagaries. It is such speculation and caprice that juries are instructed to avoid in resolving the question of *reasonable doubt*." 183 F.2d at 393–394.

Additionally, Van Fossen's thumb print appeared not on the plate alone but also on two photographic negatives. Testimony by the Government's expert indicated that photographic negatives are used in making a plate which in turn is used to print counterfeit bills. Posses-

2. While the charging statute in *Stoppelli* and *Pisano*, 21 U.S.C. § 174, deemed possession itself, if unexplained, to be evidence sufficient to sustain conviction on a charge of concealment, this statutory inference was of no value in determining whether possession was, in fact, shown in the first place.

3. Circumstantial evidence alone may support a jury verdict even though it does not exclude every reasonable hypothesis consistent with innocence. Holland v.

United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Chappell, 353 F.2d 83 (4 Cir. 1965).

4. "Intent" was not at issue in *Stoppelli*. The quoted language related to an argument of the appellant that there was no proof that his fingerprint was imprinted on the envelope on which it was found at a time when that envelope contained heroin. I think the language is, nonetheless, apposite here.

sion of counterfeiting equipment used in two separate stages of the counterfeiting process indicates to me the intent to so use that equipment. The majority speculates that appellant's possession may have been innocent. However, "Once the Government has established its case, the defendant remains quiet at his peril." Holland v. United States, 348 U.S. 121, 138–139, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *see* Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Ragland, 306 F.2d 732, 736 (4 Cir. 1962), cert. denied, 371 U.S. 949, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963); Moore v. United States, 271 F.2d 564, 568 (4 Cir. 1959).

Relying on the principle that if fingerprint evidence is to be found sufficient to warrant conviction the trier of fact must be able to reasonably infer from the circumstances that the fingerprints were impressed at the time the crime was committed, the majority finds the evidence here insufficient proof of Van Fossen's criminal intent. My brothers state: "The flaw in the government's case is the failure of the evidence to disclose when the crime was committed and when Van Fossen's fingerprints were placed on the items seized from Brown's shop. For this reason the prosecution rests on conjecture and suspicion. Because no evidence in the record suggests that the prints were impressed when the crime was committed, the jury could only have guessed at this conclusion."

Analysis of the principle relied on by the majority and examination of the cases cited in support thereof, however, reveal, I think, not "[t]he flaw in the government's case," but rather the flaw in the majority's application thereof. By way of example, in United States v. Cor-

so, 439 F.2d 956 (4 Cir. 1971), this court held that evidence of Corso's prints, found on an empty matchbook cover which had been used to jam a lock assembly on a door leading to a stairwell in a building in which a burglary had been committed, was insufficient to support his conviction of that burglary; and in Borum v. United States, 127 U.S. App.D.C. 48, 380 F.2d 595 (1967), the court held that the fact that Borum's prints were found on empty jars from which a coin collection had been removed in a home which had been entered and ransacked would not support his conviction of housebreaking.[5] I would readily approve these cases and others like them which hold fingerprint evidence insufficient when it fails to demonstrate the presence of the accused at the scene of a crime at the time the crime was committed. But it was not necessary to Van Fossen's conviction of possession of the counterfeiting plate that it be shown he possessed it at the scene of the counterfeiting operation at the time that operation existed. The criminal possession occurred *whenever* and *wherever* Van Fossen possessed the counterfeiting plate with the statutorily proscribed intent.

## II

In addition to possession of the plate, Van Fossen was convicted of printing and photographing and executing photographs and prints in the likeness of obligations of the United States. It was clearly established by the evidence that someone had committed this crime. While direct or eyewitness evidence is lacking, I would hold that it was permissible for the jury to infer from the unexplained presence of appellant's thumb prints on the negatives that he at least aided and abetted in executing and

---

5. In *Corso* and *Borum*, fingerprints had been found on objects the possesssion of which was free of suspicion. Van Fossen's prints were found on articles which were themselves instrumentalities of crime.

producing these *negatives*. The trial judge properly charged the jury that "Congress has enacted that whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal. . . ."

The majority states that to secure conviction on this charge, the Government had to show that Van Fossen "photographed and printed the counterfeit money, or aided and abetted another person in the commission of the crime." It is thus suggested that the Government was required to show Van Fossen's participation in the actual printing of counterfeit money which occurred at Brown's Business Forms. As pointed out in footnote 1 of the majority opinion, however, appellant was *acquitted* on the charge of counterfeiting money. The crime of which he was convicted—that he "did print and photograph and execute photographs and prints in the likeness of obligations of the United States"—did not require evidence that Van Fossen had actually participated in the manufacture of the counterfeit money. The defendant's guilt, in light of the aiding and abetting charge to the jury, was sufficiently established by the presence of his thumb prints on the photographic negatives.

### III

Van Fossen also assigns as error the admission into evidence of two large cardboard boxes and a suitcase filled with counterfeit bills found at Brown's Business Forms, together with a detailed explanation by the Government's expert witness as to how to distinguish counterfeit bills from lawful currency. The majority finds it unnecessary to discuss this issue and therefore I shall comment only that I find appellant's position on this assignment of error to be without merit.

I would affirm.